IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

TONY HELM,

    Petitioner,  :  Case No. 1:17-cv-329

 - vs -        District Judge William O. Bertelsman
           Magistrate Judge Michael R. Merz

NEIL TURNER, Warden,
 North Central Correctional Complex,
          :
    Respondent.

# REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought *pro se* by Petitioner Tony Helm to obtain release from his convictions in the Hamilton County Common Pleas Court. On order of Magistrate Judge Stephanie Bowman, the Respondent has filed a Return of Writ (ECF No. 8) and the state court record (ECF Nos. 5-7). Petitioner then filed his Reply (ECF No. 10). The Magistrate Judge reference in the case has been transferred to help balance the workload in the Western Division of this Court (ECF No. 11).

**Procedural History**

Petitioner was indicted by the Hamilton County grand jury on July 10, 2014, and charged with one count of burglary, one count of menacing by stalking, and one count of domestic violence, all arising from his contentious relationship with Megan Barnes. At trial the jury convicted him of burglary and menacing, but acquitted him of domestic violence. He was sentenced to an

1

aggregate term of imprisonment of nine and one-half years. With the assistance of counsel, he took a direct appeal to the First District Court of Appeals which affirmed the judgment of the trial court. *State v. Helm*, 56 N.E. 3d 436, 2016-Ohio-500 (Ohio App. 1st Dist. 2016); appellate jurisdiction declined, 146 Ohio St. 3d 1415 (2016).

On May 16, 2016, Petitioner filed a *pro se* Application to Reopen his direct appeal under Ohio R. App. P. 26(B). The First District denied the Application as untimely. It also denied a motion for reconsideration and Helm did not appeal to the Ohio Supreme Court. Helm filed his Petition for Writ of Habeas Corpus in this Court on May 9, 2017, raising the following five grounds for relief:

> **Ground One:** Trial counsel's performance was deficient per Grounds Two-Five in violation of his Sixth Amendment right of the United States Constitution.
>
> **Supporting Facts:** Trial counsel did not object to the improper Howard charge, failed to object to the improper jury admonition, failed to object when the jury conducted deliberations without all 12 jurors present, and did not properly argue that the convictions were not sustained by the sufficiency and/or manifest weight of the evidence violating Petitioner's right to effective assistance of counsel per Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052 2052, 80 L.Ed.2nd 674. Trial counsel's failure to object and failure to convince the jury that a conviction could not be sustained by the sufficiency or the manifest weight of the evidence prejudiced Petitioner. Second, if counsel had been effective, Petitioner never would have been convicted. Therefore, Petitioner seeks to have this conviction overturned due to the ineffectiveness of trial counsel that clearly violated Petitioner's Sixth Amendment right to effective assistance of counsel.
>
> **Ground Two**: Trial court erred to the prejudice of Petitioner by giving jury an improper Howard charge denying him due process and equal protection of law per the XIV Amendment of the United States Constitution.
>
> **Supporting Facts**: Ohio law recognizes State v. Howard (1989), 42 Ohio St.3d 18, 537 N.E.2d 188 as supplemental jury instructions to encourage a deadlocked jury to reach a verdict by asking them to reconsider their opinions in light of the fact that others do not agree and

to try to conscientiously to reach a verdict. Instead of using the Ohio Supreme Court approved jury instruction, the trial court gave a coercive instruction. "Why don't we try for maybe half an hour and see if you all are able to come to an agreement." Jurors were pressured to come to an agreement after 30 minutes denying Petitioner a fair trial, due process & equal protection of law as other similarly situated defendants did not receive a coercive and unfair jury instruction. Therefore to correct this manifest injustice, the only solution is correct this plain error under Crim.R. 52(B) by remanding this case back to the trial court for a retrial. This type of error cannot be repaired by nunc pro tunc or other admisistrative [sic] remedies because the fundamental nature of this trial was so fatally flawed by this coercive jury instruction that denied Petitioner his rights to a fair trial, due process & equal protection of law.

**Ground Three:** The trial court erred to the prejudice of Petitioner by not properly admonishing the jury when they separated during trial denying him a fair trial, due process, and equal protection of law per the VII & XIV Amendments of the United States Constitution.

**Supporting Facts:** O.R.C. 2945.34 says, "If the jurors are permitted to separate during a trial, they shall be admonished by the court not to... form or express any opinion thereon, until the case is finally submitted to them." The trial court never told the jurors not to form or express an opinion on the case until the matter was submitted to them. Since the proper instruction was not given by the trial court, it is impossible to say if the jury violated petitioner's right to a fair trial under the VII Amendment of the United States Constitution and of due process and equal protection under law under the XIV Amendment of the United States Constitution. Since this trial was so fatally flawed Petitioner requests that he be remanded back to the trial court.

**Ground Four:** The trial court erred to the prejudice of Petitioner by not declaring a mistrial when the jury conducted deliberations without all 12 members present denying Petitioner's right to a fair trial, due process and equal protection of law per the VII [sic] & XIV Amendments of the U. S. Constitution.

**Supporting Facts:** A juror left to feed a parking meter at which time the admonitions were given to the remaining 11 jurors. This matter is preserved in the trial transcript. Ohio courts have ruled in the case of <u>State v. Fields</u>, 5th Dist. Holmes Co. No CA 584, 1998 Ohio App. Lexis 3541 (June 30, 1998) that when 2 jurors left, to have a smoke break and discussed the case this was a cause for a mistrial. A similar situation occurred here. Once the jury process had been so tainted, there was no easy to correct this error, and the trial judge should have moved for a mistrial. Petitioner was denied his right to a fair trial under the VIIth [sic] Amendment of the United States

3

Constitution and also his rights to due process and equal protection of law under the XIV Amendment of the United States Constitution. The only solution to this manifest injustice in this case is to remand this case back to the trial court for a new trial as the error committed here has so tainted the result that Petitioner did not receive a fair trial.

**Ground Five**: The evidence was insufficient to sustain Petitioner's convictions denying him due process and equal protection of law per the XIV Amendment of the United States Constitution.

**Supporting Facts**: To convict Petitioner of Burglary the State would have to prove beyond a reasonable doubt that Petitioner trespassed into the residence. Because Petitioner was living at the residence, he did not trespass and was not guilty of burglary. Petitioner had a key to the front door of the residence. Petitioner had spent the previous night at the residence with the alleged victim, Ms. Barnes. Barnes left for work while Petitioner was still at the residence. Barnes testified on the date of the alleged crime Petitioner was staying with her. She never testified that Petitioner should not return to the residence. There was no physical evidence to show that Petitioner was the person who allegedly burglarized the residence. Therefore this conviction for burglary should be reversed. In a similar way, the conviction for menacing by stalking should be reversed because the State did not prove that Petitioner by engaging in a pattern of conduct caused Barnes to believe that he would cause her physical harm or caused her mental distress. Barnes texted Petitioner whom she allegedly feared for her safety. Had Barnes truly feared for her safety she would not have continued texting Petitioner. Therefore the conviction for menacing by stalking should be reversed.

(Petition, ECF No. 3 Page ID # 39, 41, 42, 44, and 46.)

# Analysis

**Ground One: Ineffective Assistance of Trial Counsel**

In his First Ground for Relief, Petitioner argues he was denied effective assistance of trial

counsel in four ways: when his trial attorney (1) failed to object to the improper *Howard* charge, (2) failed to object to the improper jury admonition, (3) failed to object when the jury conducted deliberations without all twelve jurors present, and (4) did not properly argue that the convictions were not sustained by the sufficiency and/or manifest weight of the evidence.

Each of these claims of ineffective assistance of trial counsel was capable of being raised on direct appeal because each of them depends on assessing counsel's conduct which would have been reflected in the trial transcript. Under Ohio law, claims of ineffective assistance of trial counsel which could have been raised on direct appeal but were not are barred by *res judicata* from being raised in a later proceeding. Thus if Helm had attempted to raise these claims of ineffective assistance of trial counsel in a later proceeding, for example, a petition for post-conviction relief under Ohio Revised Code § 2953.21, the Ohio courts would have found them barred by *res judicata.*

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal

5

habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord, Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Ohio has a relevant procedural rule, the so-called contemporaneous objection rule. Its

6

purpose is to require trial attorneys to bring errors to the attention of the trial judge at a time when they can be corrected, which was not done here. The First District enforced the contemporaneous objection rule when it reviewed the *Howard* claim for plain error. An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F.3d 239 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).

Ohio's contemporaneous objection rule — that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998) — is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010), *cert. denied*, 562 U.S. 876 (2010).

Ohio's doctrine of *res judicata* in criminal cases, enunciated in *State v. Perry,* 10 Ohio St. 2d 175 (1967), is an adequate and independent state ground of decision. *Durr v. Mitchell*, 487

F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).

Helm attempts to excuse this procedural default by claiming it was ineffective assistance of appellate counsel to fail to raise these claims of ineffective assistance of trial counsel on direct appeal (Answer to Return of Writ, ECF No. 10, PageID 1162). While ineffective assistance can excuse a procedural default, the claim of ineffective assistance of trial counsel itself must be properly raised and exhausted in the state courts; if not, it is also procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446 (2000). Helm attempted to raise such a claim of ineffective assistance of appellate counsel by filing an Application to Reopen the direct appeal, claiming ineffective assistance of trial counsel in very broad terms (Application, State Court Record, ECF No. 5, PageID 166).

The First District Court of Appeals denied Helm's Application for Reopening because it was untimely filed and because Helm "neither acknowledges nor offers an excuse for his filing delay," (Entry Denying Application for Reopening, State Court Record, ECF No. 5, PageID 173.) Helm later tendered an explanation when he moved for reconsideration on November 22, 2016, claiming his Application was in fact timely filed. (State Court Record, ECF No. 5, PageID 174.) The First District denied that motion because it found the Appellate Rules did not permit reopening of a decision to deny a Rule 26(B) application. *Id.* at PageID 176.

Helm's argument that his Application to Reopen was timely is based on his interpretation of Ohio R. Civ. P. 6(d) which, he says, adds three days to the time within which a party must act if that party is served by mail. Under this calculation, his time would have expired May 15, 2016,

8

a Sunday. Then Rule 6 would have given him an automatic extension until May 16, 2016, which was the date of actual filing. (Rule 26(A) Application, State Court Record, ECF No. 5, PageID 174.)

Helm's reading of the Ohio Rules is mistaken. Under Ohio R. App. P. 26(B), the time form filing an application for reopening expires ninety days after the appellate decision is journalized, not after service of the journalized entry. The First District's decision on direct appeal was journalized May 12, 2016. The ninetieth day thereafter was May 12, 2016, a Thursday. The First District was therefore correct in its calculation that the 26(B) application was untimely. Helm's claim that his procedural default of his ineffective assistance of trial counsel claims is excused by the ineffective assistance of appellate counsel is itself barred by his procedural default in raising that claim. The timeliness requirement in Rule 26(B) has repeatedly been held to be an adequate and independent state ground of decision. *Parker v. Bagley,* 543 F.3d 859, 861 (6th Cir. 2008)(noting that *Franklin v. Anderson*, 434 F.3d 412, 418-19 (6th Cir. 2006), was a capital case); *Scuba v Brigano*, 527 F.3d 479, 488 (6th Cir. 2007)(distinguishing holding in capital cases); *Monzo v. Edwards*, 281 F.3d 568 (6th Cir. 2002); *Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010), *citing Rideau v. Russell*, 2009 WL 2586439 (6th Cir. 2009).

Because all four sub-claims of ineffective assistance of trial counsel are barred by *res judicata* , Ground One should be dismissed as procedurally defaulted.

**Ground Two: Improper *Howard* Charge**

In his Second Ground for Relief, Petitioner argues the trial judge erred by giving an improper *Howard* charge. Regarding the *Howard* charge to the jury when it reported a deadlock,

the First District Court of Appeals found that the charge actually given departed somewhat from the language approved in *State v. Howard*, 42 Ohio St. 3d 18 (1989), but held that "the trial court's charge substantially complied with *Howard* and we cannot find that the outcome of the proceedings would have been different but for the charge." *Helm*, 2016-Ohio-500 at ¶ 19.

In considering this *Howard* claim, the First District applied the Ohio plain error standard of review. *Id.* at ¶ 18. That is, it found that Helm had forfeited straight merits review of this claim because his counsel had not objected at trial. *Id.* On this basis, Respondent asserts Helm has procedurally defaulted the underlying *Howard* claim (Return, ECF No. 8, PageID 1148). Plain error review, as noted above, is enforcement of the contemporaneous objection procedural rule, not a waiver of it.

Helm seeks to excuse his counsel's failure to make an objection to the *Howard* charge as ineffective assistance of trial counsel. For reasons set forth above as to Ground One, this claim of ineffective assistance of trial counsel is procedurally defaulted and cannot excuse the failure to make a contemporaneous objection.

Moreover, the question of whether a state trial judge must conform exactly to language preferred by the Ohio Supreme Court in the *Howard* case in a situation of jury deadlock is a question of Ohio law. Because federal habeas corpus relief is only available to remedy constitutional errors, this Ground for Relief does not state a claim upon which habeas corpus relief can be granted. We cannot review a state court decision on a question of state law.

Ground Two should therefore be dismissed as procedurally defaulted and for failure to state a claim upon which habeas corpus relief can be granted.

**Ground Three: Improper Jury Admonition**

In his Third Ground for Relief, Helm claims the trial court erred in failing to admonish the jury upon separating in accordance with Ohio Revised Code § 2945.34. This claim is not properly cognizable in habeas corpus. Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1, 5 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C.J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. 2018)(Thapar concurring). There is no Supreme Court precedent known to this Magistrate Judge which requires a trial judge to admonish a jury on the subject covered by Ohio Revised Code § 2945.34 in the language provided in that statute or in any other particular language.

For the reasons given as to Ground Two, this claim is also barred by failure to make a contemporaneous objection. As noted above, this is a long-standing Ohio rule and the First District enforced it against Helm by applying plain error review. The claim of excusing ineffective assistance of trial counsel is barred by procedural default in failing to raise it on direct appeal by virtue of the *res judicata* doctrine of *State v. Perry, supra*.

**Ground Four: Failure to Declare a Mistrial**

In his Fourth Ground for Relief, Helm claims the trial court erred by not declaring a mistrial when the jurors continued to deliberate with one juror temporarily missing to feed a parking meter. The First District found that the trial record showed the attorneys and the trial judge were present with the jury while the one juror fed the meter and that there was no evidence any deliberations took place at that time. *Helm, supra*, ¶ 28. Because Helm's trial attorney made no objection, the First District enforced the contemporaneous objection rule by reviewing this claim for plain error only. *Id.* Thus as with the second sub-claim merits review of the underlying claim is barred by procedural default and the asserted trial attorney ineffectiveness cannot serve as an excuse because the ineffectiveness claim itself is barred by the *res judicata* rule.

Moreover, this claim is also without merit. There is no Supreme Court precedent recognizing a constitutional right to a mistrial when one juror leaves deliberations long enough to feed a parking meter and there is no evidence any deliberations took place in the juror's absence.

**Ground Five: Insufficient Evidence to Convict**

In his Fifth Ground for Relief, Petitioner asserts his convictions are not supported by sufficient evidence.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order

for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, Case No. 3:03-PO-002, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio Oct. 12, 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law that determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.* A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. ___, 136 S.Ct. 709, 715, 193 L.Ed.2d 639 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard,* 11 F.3d 618, 620

> (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, [2], 132 S.Ct. 2, 181 L.Ed.2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. [766], [773], 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam).

This sufficiency of the evidence claim was presented to the First District Court of Appeals which decided it as follows:

[*P29] In his fourth assignment of error, Helm challenges the sufficiency and weight of the evidence supporting his convictions.

[*P30] We do not weigh the evidence when considering its sufficiency. Rather, we must view all evidence and reasonable inferences in the light most favorable to the prosecution, and determine whether the trier of fact could have found all the elements of the offenses proven beyond a reasonable doubt. *See State v. Martin*, 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717 (1st Dist.1983). When reviewing the manifest weight of the evidence, we must consider the credibility of the witnesses and weigh the evidence presented to determine whether, in convicting Helm, the jury lost its way and created such a manifest miscarriage of justice that Helm's convictions must be overturned. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997 Ohio 52, 678 N.E.2d 541 (1997).

[*P31] Helm was found guilty of burglary under R.C. 2911.12(A)(2), which provides that

> No person, by force, stealth, or deception, shall * * * trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense.

Helm contends that he could not have been found guilty of burglary because he had been living with Barnes and had not trespassed into her residence. A trespass is committed when a person knowingly enters the land or premises of another without privilege to do so. *See* R.C. 2911.21(A)(1). When determining whether a trespass has occurred, the custody and control of the dwelling, rather than legal title, are dispositive. *See State v. Lilly*, 87 Ohio St.3d 97, 102, 1999 Ohio 251, 717 N.E.2d 322 (1999).

[*P32] Helm had no legal title to Barnes' residence, nor did he have custody or control over the dwelling. The home was rented in Barnes' name only, and Helm stayed with her when the two were in a relationship and his job did not require him to be out of town. The burglary occurred sometime in the late afternoon or early evening of June 25, 2014. Earlier that same day, Helm, of his own volition, moved all of his belongings out of Barnes' residence and informed her via text message that he had done so. Barnes verified that he had left her premises, and she placed a kick bar in her front door to

> prevent Helm from using a key to enter. Barnes clearly had sole custody and control of the dwelling, and the record contains sufficient evidence to demonstrate that Helm had trespassed onto her property.
>
> [*P33] Helm further argues that the state introduced no evidence to establish that he had perpetrated the offense. We disagree. The police had found a knife sticking out of Barnes' mattress and her pillow slashed. And the state had introduced into evidence numerous text messages that Helm had sent to Barnes, including one stating "How did you like your pillow? Your [sic] next." This was sufficient circumstantial evidence to establish Helm's identity as the perpetrator of the offense.
>
> [*P34] With respect to his conviction for menacing by stalking, Helm alleges that the evidence was not sufficient to establish that Barnes had suffered mental distress. Helm was convicted of menacing by stalking under R.C. 2903.211(A)(1), which provides that "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."
>
> [*P35] The evidence presented established that Barnes was terrified of Helm and believed that he would cause her physical harm. She reported his behavior to the police on numerous occasions and obtained a temporary protection order against him. She specifically testified that she feared for her safety and that her mental stability was held together by a string. Helm's conviction for menacing by stalking was supported by sufficient evidence.

*Helm,* 2016-Ohio-500.

Most of Petitioner's argument in his reply is devoted to this insufficiency claim. He points out the many ways in which Megan Barnes was impeached on cross-examination – breaking her lease by letting him live with her but not getting consent from the landlord or paying extra rent (ECF No. 10, PageID 1163); lying to the police (*id.* at PageID 1164); and being a persistent marijuana user (*id.*). He also notes the absence of certain forensic evidence that would have been available: DNA testing of the knife found stabbed into Barnes' mattress and comparison of the tire tracks found at Barnes' residence with those of Helms' truck. *Id.* at PageID 1163. There was

also evidence which called into question whether he was a lawful occupant of Barnes' residence, to wit, the fact that Helms' tax returns for the prior year were filed from Barnes' residence.

All of this evidence was relevant to Megan Barnes' credibility, which is why Helm's lawyer asked the questions and the trial judge allowed them to be asked. But ultimately as the First District pointed out, the question of credibility is for the jury to decide. Barnes provided admissible testimony on all the necessary elements of all three crimes with which Helm was charged. Although that testimony was impeached, none of the impeachment reached the level that a rational juror could not possibly have believed it.

Helm argues that the jury's acquittal on the domestic violence charge must mean they found Barnes to be a liar and therefore none of her testimony should have been believed. But the jury's verdict does not reveal why it convicted on two counts and acquitted on the third, nor under our system of jury trials would a split verdict like this ever be explained in a way that invalidated the convictions. In addition, jurors are instructed that they may find credible some, all, or none of each witness' testimony. See Ohio Jury Instructions, Section 409.05. The First District also noted that Lockland Police Officer Ruth declined to file domestic violence charges when Barnes brought her temporary protection order to the police station because she had no visible injuries at that time. *Helm, supra*, at ¶ 5. This testimony may also have persuaded the jury to acquit on the domestic violence count.

Whether Helm was still a resident of the Lockland home at the time the mattress was stabbed was a question of fact for the jury to decide. One telling piece of evidence was a text message Barnes received the same day which said Helm had moved out and taken his belongings with him. *Helm, supra*, at ¶ 7. Helm argues anyone could have sent that text, but fails to offer here (and apparently did not offer at trial) any plausible explanation of why someone other than

17

himself would have sent the message.  Indeed, the fact that Helm had moved out was confirmed by Barnes when she returned home and examined the house.  *Helm, supra*, at ¶ 8.

Courts confronted with a sufficiency of the evidence claim do not reweigh the evidence, and the First District did not do so.  Instead, it found there was sufficient evidence on every material element of the two counts of conviction to persuade a rational juror to convict.  That determination is entitled to deference from this Court.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

June 14, 2018.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).